

DSS
SOUTH CAROLINA
DEPARTMENT of SOCIAL SERVICES

DEPARTMENT OF SOCIAL SERVICES
SOUTH CAROLINA

NIKKI R. HALEY, GOVERNOR
V. SUSAN ALFORD, STATE DIRECTOR

December 9, 2016

**VIA E-MAIL**
Mr. Dan Parris
Insurance Reserve Fund
1201 Main Street
Columbia SC 29201
dparris@irf.sc.gov

RE: ***Marvin Eubanks v. Holly Eubanks, et al.***

Dear Mr. Parris:

Please find attached herewith a Summons and Complaint in the above-referenced matter. I am submitting the claim for defense counsel to be assigned. We received the pleadings on December 9, 2016, through delivery by facsimile.

Should you have any questions, you may contact me at (803) 898-7368. Thank you for your attention to this matter. With kind regards, I am

Sincerely,

*Tony Catone*

Anthony S. H. Catone
General Counsel
South Carolina Department of Social Services

STATE OF SOUTH CAROLINA

COUNTY OF LANCASTER

Marvin Eubanks

Plaintiff(s)

vs.

Holly Eubanks, South Carolina Department of Social Services and Janice Chapman individually for her actions as Lancaster County DSS Director ,

Defendant(s)

IN THE COURT OF COMMON PLEAS

CIVIL ACTION COVERSHEET

2016-CP - 29- 01151

12-8-2016 @ 7:55pm

FILED OFFICE OF CLERK OF COURT
2016 SEP 29 PM 4:29
CLERK OF COURT LANCASTER, SC

Submitted By: Robert V. Phillips
Address: 1539 Healthcare Drive, Rock Hill, SC 29732

SC Bar #: 68458
Telephone #: 803-327-7800
Fax #: 803-328-5656
Other:
E-mail: rphillip@mcgowanhood.com

**NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint.**

## DOCKETING INFORMATION *(Check all that apply)*

****If Action is Judgment/Settlement do not complete***

☒ **JURY TRIAL** demanded in complaint. ☐ **NON-JURY TRIAL** demanded in complaint.

☐ This case is subject to **ARBITRATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☒ This case is subject to **MEDIATION** pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is exempt from ADR. (Proof of ADR/Exemption Attached)

## NATURE OF ACTION *(Check One Box Below)*

**Contracts**
- ☐ Constructions (100)
- ☐ Debt Collection (110)
- ☐ Employment (120)
- ☐ General (130)
- ☐ Breach of Contract (140)
- ☐ Other (199)

**Torts - Professional Malpractice**
- ☐ Dental Malpractice (200)
- ☐ Legal Malpractice (210)
- ☐ Medical Malpractice (220)
- Previous Notice of Intent Case # 20____-CP-____-________
- ☐ Notice/ File Med Mal (230)
- ☐ Other (299)

**Torts – Personal Injury**
- ☐ Assault/Slander/Libel (300)
- ☐ Conversion (310)
- ☐ Motor Vehicle Accident (320)
- ☐ Premises Liability (330)
- ☐ Products Liability (340)
- ☒ Personal Injury (350)
- ☐ Wrongful Death (360)
- ☐ Other (399)

**Real Property**
- ☐ Claim & Delivery (400)
- ☐ Condemnation (410)
- ☐ Foreclosure (420)
- ☐ Mechanic's Lien (430)
- ☐ Partition (440)
- ☐ Possession (450)
- ☐ Building Code Violation (460)
- ☐ Other (499)

**Inmate Petitions**
- ☐ PCR (500)
- ☐ Mandamus (520)
- ☐ Habeas Corpus (530)
- ☐ Other (599)

**Administrative Law/Relief**
- ☐ Reinstate Drv. License (800)
- ☐ Judicial Review (810)
- ☐ Relief (820)
- ☐ Permanent Injunction (830)
- ☐ Forfeiture-Petition (840)
- ☐ Forfeiture—Consent Order (850)
- ☐ Other (899)

**Judgments/Settlements**
- ☐ Death Settlement (700)
- ☐ Foreign Judgment (710)
- ☐ Magistrate's Judgment (720)
- ☐ Minor Settlement (730)
- ☐ Transcript Judgment (740)
- ☐ Lis Pendens (750)
- ☐ Transfer of Structured Settlement Payment Rights Application (760)
- ☐ Confession of Judgment (770)
- ☐ Petition for Workers Compensation Settlement Approval (780)
- ☐ Other (799)

**Appeals**
- ☐ Arbitration (900)
- ☐ Magistrate-Civil (910)
- ☐ Magistrate-Criminal (920)
- ☐ Municipal (930)
- ☐ Probate Court (940)
- ☐ SCDOT (950)
- ☐ Worker's Comp (960)
- ☐ Zoning Board (970)
- ☐ Public Service Comm. (990)
- ☐ Employment Security Comm (991)
- ☐ Other (999)

**Special/Complex /Other**
- ☐ Environmental (600)
- ☐ Automobile Arb. (610)
- ☐ Medical (620)
- ☐ Other (699)
- ☐ Pharmaceuticals (630)
- ☐ Unfair Trade Practices (640)
- ☐ Out-of State Depositions (650)
- ☐ Motion to Quash Subpoena in an Out-of-County Action (660)
- ☐ Sexual Predator (510)

**Submitting Party Signature:** __________________ **Date: September 27th 2016**

**Note:** Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

Received -10:54:53 2016-1

Opt-Out: Not Defined

**FOR MANDATED ADR COUNTIES ONLY**

Allendale, Anderson, Beaufort, Clarendon, Colleton, Florence, Greenville, Hampton, Horry, Jasper, Lee, Lexington, Pickens (Family Court Only), Richland, Sumter, Union, Williamsburg, and York

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:** **You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.**

Received -10:54:53 2016-1

Opt-Out: Not Defined

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF LANCASTER | C. A. NO: 2016-CP-29-01151 |
| Marvin Eubanks, Plaintiff(s), | |
| vs. | **SUMMONS** |
| Holly Eubanks, South Carolina Department of Social Services and Janice Chapman individually for her actions as Lancaster County DSS Director, Defendant(s). | |

FILED OFFICE OF CLERK OF COURT
2016 SEP 29 PM 4:29
CLERK OF COURT LANCASTER, SC

**TO: THE DEFENDANTS ABOVE NAMED**

**YOU ARE HEREBY SUMMONED** and required to Answer the Complaint, a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint on the subscriber at his office at 1539 Health Care Drive, Rock Hill, South Carolina, 29732, within thirty (30) days from the service hereof, exclusive of the date of such service; and if you fail to Answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

**MCGOWAN HOOD & FELDER, LLC**

Robert V. Phillips, Esq.
1539 Health Care Drive
Rock Hill, South Carolina 29732
(803) 327-7800 – Office
(803) 328-5656 – Facsimile
rphillips@mcgowanhood.com

Rock Hill, South Carolina
September 27, 2016

Received -10:54:53 2016-1

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF LANCASTER | C. A. NO: 2016-CP-29-01151 |
| Marvin Eubanks, Plaintiff(s), vs. Holly Eubanks, South Carolina Department of Social Services and Janice Chapman individually for her actions as Lancaster County DSS Director, Defendant(s). | **COMPLAINT** **(Jury Trial Demanded)** |

2016 SEP 29 PM 4:28
CLERK OF COURT
LANCASTER, SC
FILED
OFFICE OF CLERK
OF COURT

The Plaintiff, by and through his undersigned counsel, for a Complaint against the Defendants, does hereby respectfully allege as follows:

**PARTIES**

**Plaintiffs**

1. The Plaintiff, Marvin Eubanks (hereinafter "Marvin") is a citizen and resident of Lancaster County, State of South Carolina and was at all times mentioned herein.

**Defendants**

2. South Carolina Department of Social Services (hereinafter "DSS") is a political subdivision of the State of South Carolina and/or some other type of entity that is/are responsible for the actions of its agents and employees of DSS and, including but not limited to employees at the local Lancaster County department of DSS.

3. This 'employing' Defendant is sued in its representative capacity pursuant to the South Carolina Tort Claims Act that makes the employing entity liable for the torts of its employees (*S.C. Code* §15-78-70). Plaintiff alleges DSS is liable for the acts and omissions of its employees for the negligence, gross negligence, recklessness and other liability forming

Received -10:54:53 2016-1

Opt-Out : Not Defined

conduct that caused harm to the Plaintiff.

4. Janice Chapman individually for her actions as Lancaster County DSS Director (hereinafter "Chapman") was at all relevant times acting under color of law and in the course and scope of her duties as employee, agent and/or caseworker supervisor/director of the Lancaster County Director of DSS. She had the ability to control, direct, dismiss and/or continue with any case instigated out of the Lancaster DSS office. She is believed to be a citizen and resident of the County of Lancaster, or at least was at the time of the alleged incident. She is sued in her individual capacity for compensatory and punitive damages under Federal law

5. The negligent and grossly negligent acts, omissions and other liability forming conduct of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, apparent authority, agency, ostensible agency and/or respondeat superior and the acts and/or omissions of the above-named Defendants were the direct and proximate cause of the injuries, damages and losses of the Plaintiff.

6. Defendant Holly Eubanks (hereinafter "Holly"), is or was, a resident of Lancaster County at the time of the incidents alleged in this Complaint.

7. Punitive damages are not sought against DSS as the employing Defendant for the State law (South Carolina Tort Claims Act) causes of action.

8. Punitive damages and attorney's fees are sought against Defendant Holly Eubanks as well as Defendant Chapman who is sued under Federal law for her actions while employed at DSS.

## JURISDICTION

9. Jurisdiction is founded upon South Carolina common law and pursuant the South Carolina Tort Claims Act *S.C. Code Ann.* § 15-78-10, *et seq.*.

Received -10:54:53 2016-1:

Opt-Out: Not Defined

10. Further, the events which give rise to this litigation occurred in or near Lancaster County, South Carolina.

11. Plaintiff further invokes this Court's concurrent jurisdiction to hear claims arising under the Fourteenth Amendments of the United States Constitution and brought pursuant to 42 U.S.C. §§ 1983 and 1988 against the individually named Defendant Chapman.

**GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

12. During or about the year 2004, Plaintiff Marvin and Defendant Holly were legally married as husband and wife.

13. Before this marriage, Holly had given birth to a child (female) with another man.[1]

14. This other man was Father Doe and the female child was Girl Doe.

15. During a large portion of the marriage between Plaintiff Marvin and Defendant Holly, Father Doe was incarcerated.

16. At the same time Marvin, Holly and Child Doe all lived in the same household in Lancaster County.

17. At some point before August 11, 2011, Father Doe was released from prison.

18. When Father Doe was released from prison, Defendant Holly and Father Doe began a surreptitious relationship.

19. Holly and Father Doe wanted to 'get back together again' but there was a problem; Holly was still married and living together with Plaintiff Marvin.

20. It was then that Defendant Holly concocted a scheme to get Marvin out of her house and out of her life in very quick fashion.

---

1 In order to retain as much privacy as possible and without forgoing the rights of the Plaintiff, this Complaint will simply refer to the father of the minor female child as "Father Doe" and will

Received -10:54:53 2016-1:

Opt-Out: Not Defined

21. Holly persuaded Child Doe to write a letter stating that Marvin had touched her in a sexual manner so that Holly could then provide that letter to the authorities.

22. Based on the contents of this letter, on August 11, 2011, Marvin was arrested and charged with sexually molesting Child Doe.

23. As is standard operating procedure, whenever there are accusations of improper conduct with a child family member, criminal or not, DSS brings a civil suit/case against the alleged perpetrator.

24. DSS brings these types of cases usually for the protection of the minor victim (alleged victim) and while DSS lawsuits cannot generally result in jail time or incarceration, they can remove children from the custody of the accused, kick the accused out of his own house, impose a number of relationship restrictions on the accused, require the accused to undergo treatment and/or counseling as well as enter the accused into the South Carolina DSS Central Registry for Abuse and Neglect Database.

25. Entry into this registry can cause a lifetime of work and lifestyle restrictions as well as result in the obvious scorn and shame throughout the community.

26. A few months after the arrest, DSS filed a case (No., 2012-DR-29-008) against Plaintiff, in which Defendant DSS accused Marvin of sexually abusing Girl Doe, the daughter of Defendant Holly Eubanks.

27. As a result of the allegations against him, Marvin was forced to leave his home.

28. Within three days of Marvin being removed from his home, Defendant Holly Eubanks allowed the Father Doe, Child Doe's biological father, to move in and begin living in the residence where Marvin had just been living as a family only a few days prior.

---

refer to the minor female child simply as "Girl Doe".

Received -10:54:53 2016-1

Opt-Out: Not Defined

29. These false allegations were part of a scheme and plan by Holly Eubanks to have Marvin Eubanks removed from the house by Defendant SCDSS to make room for Father Doe.

30. As part of most DSS investigations where there are allegations of abuse, sexual or otherwise, a DSS caseworker will conduct a private interview with the minor child.

31. This is done primarily so that DSS can get the 'real' story from the child without the child feeling pressure, influence or nervousness with the presence of a parent there.

32. Interestingly enough, during the course of this DSS investigation, Defendant Holly would never allow DSS to interview Child Doe without Holly being present.

33. This was clearly an effort by Defendant Holly to ensure that Child Doe would "toe the party line" of her scheming mother and not 'spill the beans' to DSS and Holly not be there to stop it.

34. However, on one day during the investigation, well before Plaintiff Marvin was ever adjudicated of any wrongdoing in this matter, one of the DSS caseworkers on Marvin's case named Heidi Roberts went to Child Doe's school to meet with her in the hopes she could talk to the minor child without the parental influence of Defendant Holly Eubanks standing over Child Doe's shoulder.

35. At this meeting, Child Doe told caseworker Heidi Roberts that "her step-father (Plaintiff Marvin) did not touch her and that her mother (Defendant Holly Eubanks) had told her to say that." (See Attached as **Exhibit #1 – Heidi Roberts Handwritten Case Notes - redacted)**

36. This ground-shaking piece of information was absolutely critical to the prosecution of Marvin Eubanks as well as to Marvin's own defense of the accusations.

37. As such caseworker Heidi Roberts immediately told her local DSS County

Received -10:54:53 2016-12

Opt-Out: Not Defined

Director, Defendant Chapman, about this very important matter.

38. Any reasonable person on Earth would expect the investigation and prosecution against Marvin to either be dropped, or at the very least, to be taken in another direction with a serious review of the statements and actions of Defendant Holly and Child Doe.

39. But that is not what happened.

40. What happened was that upon Heidi Roberts' providing this 'game-changing' information to her superiors, Defendant Chapman instructed caseworker Heidi Roberts "*to not notate anything regarding that disclosure in CAPSS*[2] *or to follow up in anyway, including with the child's counselor…*" and in fact she was "specifically directed to "keep that to [herself]"." (See **Exhibit #2 – Heidi Roberts Letter to SC DSS Director Koller**)

41. After these clear and unequivocal commands from Defendant Chapman, this very likely exculpating information was simply buried and the improper prosecution of Marvin Eubanks continued as if nothing had ever happened with caseworker Heidi Roberts and Child Doe.

42. Contrary to popular belief, the old adage of "*don't admit to something you didn't do*" can often be a very ill-advised course of action.

43. In today's society with our rush to judgment, '*castrate all the molesters*' and '*only the guilty are accused*' mentality, falsely accused citizens often face an extremely difficult dilemma.

---

2 "CAPSS" stands for Child Adult Protective Services System and is a computerized database system used by SC DSS and its caseworkers to document and manage all pertinent and important pieces of information from an investigation. This centralized 'clearing house' of data allows other caseworkers to have access to all pertinent evidence collected in the case. It goes without saying how important the completeness, accuracy and integrity of the CAPPS system is for the fair and equitable disbursement of justice to the citizens of South Carolina.

Received -10:54:53 2016-1:

Opt-Out: Not Defined

44. On the one hand, '*standing up for your rights*' and never admitting to something you did not do is certainly admirable, however, admiration did little to comfort the 344 people who were wrongly convicted of capital murder and sentenced to death that were later proven, as a matter of law, innocent of the crime they were charged with through post-conviction legal filings and DNA testing by the Innocence Project[3].

45. The general public is also usually ignorant of the fact that persons can be, and often are, convicted of murder and other heinous crimes and even sentenced to death or life in prison based solely upon the spoken word of one person.

46. Many members of the general public also often wrongly assume there must be at least some type of corroborating forensic evidence before a person's life is ended and/or drastically changed forever.

47. And in this case, make no mistake, the only evidence for the heinous act, for which Marvin Eubanks was accused, was simply the word of a child, and the word of a child who was never allowed to be interviewed outside the presence of a scheming mother with a clear and present agenda.

48. Then to have 100% exculpating spoken word evidence from the same child, who had previously provided the only spoken word evidence against Marvin, buried simply because Defendant Chapman wanted to "*get her man*", "*rack up her conviction numbers and rates*" or, God forbid, admit that maybe DSS had jumped the gun on a case, makes the actions of DSS and Defendant Chapman all the more heinous and downright offensive.

49. However, because of the improper actions of these Defendants, Marvin did not

3 http://www.innocenceproject.org/all-cases/#exonerated-by-dna

Received -10:54:53 2016-1?

Opt-Out: Not Defined

have all the evidence before him when having to decide if he should fight these allegations or try to make the best of a horrible situation, take a less risky course of action and attempt as best he could to mitigate the downside.

50. Option number one for Marvin was to fight the allegations full on.

51. However, this was going to be a trial of only "he said/she said" and what juror is not going to believe the word of a 'sweet little girl who was attacked by this monster'? (*spoken rhetorically of course*)

52. If by chance the judge and jury decide to believe Child Doe's word over Marvin's word, then for all intents and purposes, Marvin's life is 100% over and he is finished.

53. No person in the United States needs to be reminded of the hell on Earth a convicted child molester will face aside from the mere jail time he will serve (and sometimes rightfully so).

54. Despite the lengthy prison sentence child molesters often receive, many convicted child molesters never make it out alive as they are often killed and/or have their throats slit by other inmates intent upon meting out their own justice[4].

55. Further, there is not a criminal defense attorney in the state who has not seen an overly lengthy sentenced imposed by the court because the defendant "*showed little remorse*" or "*was not sorry for his crime*", which then often creates the legal paradox that when a person asserts his Constitutional right to deny his accusers, if a jury disagrees with him, this same person then must change his claim and lie to the court, admit he committed the crime all so he can now show the court how sorry he is (for the crime he did not commit) in order to minimize

4 http://abcnews.go.com/US/prison-living-hell-pedophiles/story?id=90004

Received -10:54:53 2016-1

his punishment.

56. The dynamics of our criminal justice system have evolved to where it is an 'all or nothing' scenario where if you decide to "maintain your innocence" you are forced to quite literally "double down" with your life as your wager.

57. Therefore, and as the general public most often fails to understand, truly innocent people are sometimes forced to compromise, that is take some small amount of "injustice", and admit to something you know you did not do, so as to avoid an even greater injustice of literally dying for something you know you did not do.

58. That is the unfortunate decision Marvin was forced to make; and criticize him if you will, he decided to take an un-just minimal punishment for something he did not do so he could avoid losing his life over something he did not do.

59 And so on October 15, 2012 in front of a South Carolina Family Court judge in Lancaster, South Carolina, when the attorney for Defendant DSS announced to the Court what Marvin was accused of, sexually molesting Child Doe, Marvin did not deny these horrific allegations and entered a plea under N.C. v Alford, 400 U.S. 25 (1970).

60. As a result of Marvin's "forced" Alford plea, Marvin's name was entered in the statewide Central Registry Database as a 'Sexual Abuser of Children", Marvin was forced out of his home, Marvin was denied the ability to ever see his step-daughter he had raised as his own for years, Marvin lost custody of his own biological child, Marvin was forced to undergo, and pay for it himself, a 'sexual perpetrator assessment' and adhere to any recommendations from this assessments lest he be jailed for Contempt of Court and then of course suffer the shame, humiliation, scorn, embarrassment and loss of friends and other familial relationships.

61. Fast forward nearly two years with the pending criminal charges hanging over

Received -10:54:53 2016-1

Opt-Out: Not Defined

Marvin's head that would surely include a lengthy prison sentence, and as mentioned above, an effective death sentence, something changed.

62. That change was the growing amount of guilt and courage of DSS caseworker Heidi Roberts.

63. Heidi Roberts could not stand it any longer and with a brave leap of faith supported by this guilt and courage, Ms. Roberts contacted legal counsel for Marvin, attorney Paul Reeves in Columbia.

64. In October of 2014, Heidi Roberts called attorney Reeves and told him she had some important information for him.

65. She of course could not tell him anything about what it was because DSS files concerning children are generally confidential and Heidi Roberts did not want to do anything improper or violate any type of court order or the law.

66. Heidi Roberts suggested attorney Reeves ask the Court for an Order allowing her to release her confidential DSS file documents for Marvin's case.

67. After the filing of a Petition and a hearing, the Family Court judge in Lancaster County issued an Order allowing Heidi Roberts to release her file.

68. Once the Order was approved, signed and filed in December of 2014, the confidential documents from Heidi Roberts, her letter to the SC DSS Director Lillian Koller (See **Exhibit #2**) and her own handwritten notes that she took from her interview with Child Doe, the very same notes she was instructed to "bury" and not enter into the CAPPS database by Defendant Chapman, (See Attached **Exhibit #1**) were for the very first time made known and/or produced to Marvin and his attorney.

69. It was at this time that Marvin and his attorney learned that this horrible

Received -10:54:53 2016-1

Opt-Out: Not Defined

nightmare had been nothing more than a dangerous ruse (for Marvin anyway) to get him out of his wife's house and life so that Defendant Holly could be with her old flame and do it in the quickest manner possible, someone else's entire life be damned.

70. Of course once these extremely important documents were finally disclosed, Marvin and his attorney produced them to the Sherriff's Department and Solicitor for Lancaster County and his criminal charges were *nolle prosse*d (dismissed).

71. While obviously Marvin avoided a lengthy prison sentence (or worse), he will never be able to erase the damage done by having been not only improperly accused of these heinous acts, but also by the continued prosecution of DSS despite this incredibly exculpatory evidence, and once that bell has been rung, there is no un-ringing it.

72. To this date, many years after having this exculpatory evidence not one of these Defendants has so much as lifted a finger to rectify the injustice they have rained down upon Marvin Eubanks.

73. It is obvious all of these Defendants would rather a man's life be ruined rather any one of them admit they were wrong, they had been fooled by a scheming mother and her teenage daughter, they lost a case or in some way have some small amount of 'egg on their face'.

74. For these Defendants, they would rather an innocent man be incarcerated for the rest of his life and risk having his throat slit in a case of 'jailhouse justice' than to do the right thing and let him know of this exculpatory evidence and maybe 'win' his case, to the extent one can ever win after being falsely charged and prosecuted for being a child molester.

75. That as a direct and proximate result of all of the Defendants' acts and/or omissions the Plaintiff has suffered irreparable harm and damage.

Received -10:54:53 2016-1

Opt-Out: Not Defined

**FOR A FIRST CAUSE OF ACTION**
**(Negligence & Gross Negligence – State Tort Claims Act)**
**(As to all Defendants except Holly Eubanks)**

76. The Plaintiff incorporates by reference all previous paragraphs above as if repeated herein.

77. The Defendants DSS and Chapman all departed from the duties of care required by social service workers and the agencies that hire, train and employ these workers and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to Plaintiff in that they committed one or more of the following acts of omission or commission, any or all of which were departures from the prevailing duties of care owed by each Defendant:

a. in failing to properly prosecute the DSS case against Marvin;

b. in failing to properly terminate the DSS case against Marvin;

c. in failing to properly follow-up with further investigations, interviews, etc., after being made aware of Girl Doe's recanting;

d. in failing to properly document the file in the DSS case against Marvin;

e. in failing to notify Marvin and/or his attorney of the recanting of Girl Doe;

f. in failing to appreciate the conditions that existed during the days of the investigation and prosecution in question;

g. in failing to adhere to proper social service procedures;

h. in failing to use discretion before, during and after the DSS complaint and/or prosecution of Marvin;

i. in failing to have in place proper and adequate policies, procedures and protocols for social workers to investigate these types of allegations pursuant to the law and proper social services procedure, training of its employees or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them;

j. in failing to take any reasonable steps to ensure the accuracy of prosecutorial file;

g. in failing to maintain the authenticity, integrity and accuracy of an investigative

Received -10:54:53 2016-1?

Opt-Out: Not Defined

file when a person is being prosecuted; and,

k. in such other particulars as may be ascertained through discovery procedures undertaken pursuant to South Carolina Rules of Civil Procedure.

78. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the duties of care owed by Defendants, Plaintiff was severely injured and has suffered severe and extreme emotional distress, anxiety, grief and other harms and losses for which the Plaintiff is entitled to recover in an amount to be determined by a jury at the trial of this action.

**FOR A SECOND CAUSE OF ACTION**
**(Negligence, Gross Negligence & Recklessness)**
**(As to Defendant Holly Eubanks)**

79. The Plaintiff realleges each and every allegation contained in all of the above paragraphs as if set forth herein verbatim.

80. The Defendant Holly had a duty to not encourage and/or allow Girl Doe to make accusations of sexual abuse without just cause or reasonable cause.

81. Upon information and belief Defendant Holly violated this duty and other duties owed to the Plaintiff and expect to learn of these during the discovery of this case.

82. The Defendant Holly was negligent, grossly negligent and reckless in violating the above-described duties.

83. As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff suffered damaged.

**FOR A THIRD CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress / Outrage**
**(As to all Defendants)**

84. The Plaintiff realleges each and every allegation contained in all of the above

Received -10:54:53 2016-1?

Opt-Out: Not Defined

paragraphs as if set forth herein verbatim.

85. By causing Plaintiff to be the subject of a DSS investigation and subsequent lawsuit/prosecution that included all of the foreseeable issues of being arrested, kicked out of his home, losing the custody of his children, put on a sexual offender registry, etc., Defendants intentionally or recklessly inflicted, and continue through today to inflict, severe emotional distress upon the Plaintiff, or were certain or substantially certain that such distress would result from their conduct.

86. The Defendants' conduct was, and continues to be, so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

87. The emotional distress suffered by the Plaintiff was severe so that no reasonable person could be expected to endure it.

88. The actions of the Defendants were the direct and proximate cause of the Plaintiff's emotional distress and other damages.

89. As a result of these Defendants' acts and omissions, the Plaintiff has suffered a loss of friends and social acquaintances, severe emotional distress, mental anxiety and other harms and losses as well as being embarrassed in front co-workers at his place of employment.

**FOR A FOURTH CAUSE OF ACTION**
**Civil Conspiracy**
**(As to All Defendants)**

90. That the Plaintiff realleges each and every allegation contained in all of the above paragraphs as if set forth herein verbatim.

91. By the direct and indirect result of the combined actions of the Defendants together, they either prosecuted or caused to be prosecuted the Plaintiff by having him be the

Received -10:54:53 2016-1

Opt-Out: Not Defined

subject of and the improper continuation of an improper DSS action.

92. These actions were done for the purpose injuring the Plaintiff Marvin, as outlined above.

93. As a result, Plaintiff has suffered special damages, including but not limited to having been the subject of a DSS investigation, a DSS lawsuit, and including but not limited to a criminal arrest and prosecution, having to hire a civil defense attorney as well as a criminal defense attorney and other damages.

**FOR A FIFTH CAUSE OF ACTION**
**(42 U.S.C. § 1983 14th Amendment/Due Process)**
**(As to Defendant Chapman)**

94. The Plaintiff incorporates by reference all previous paragraphs above as if repeated herein.

95. By the acts and omissions described above, Defendant County Supervisor violated 42 USC §1983, depriving Plaintiff Marvin of the following clearly-established and well-settled constitutional rights protected by the Fourteenth Amendments to the U.S. Constitution:

a. The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking actions before, during and after the DSS prosecution of Marvin as secured by the Fourteenth Amendment;

b. The right to be free from deprivation of liberty and injury without substantive due process and from state created/enhanced danger as secured by the Fourteenth Amendment;

c. And in such other particulars as may be learned through discovery.

96. As a direct and proximate result of Defendant's acts and/or omissions as set forth above, Plaintiff sustained injuries and damages as otherwise set forth in this Complaint.

97. The conduct of Defendant Chapman in her individual capacity, entitles Plaintiff to punitive damages and penalties allowable under 42 USC §1983 and the S.C. Code.

Received -10:54:53 2016-1

Opt-Out: Not Defined

98. Plaintiff is also entitled to reasonable costs and attorney fees under 42 USC §1988 and applicable South Carolina codes and laws.

**FOR AN SIXTH CAUSE OF ACTION**
**Malicious Prosecution, Both State and 1983 Civil Rights Violations**
**(As to All Defendants)**

99. The Plaintiff realleges each and every allegation contained in all of the above paragraphs as if set forth herein verbatim.

100. The Defendants instigated and/or set in motion the DSS prosecution which is a quasi-criminal/quasi civil proceeding against the Plaintiff and/or continued this proceeding when it should not have continued.

101. The proceedings were by or at the instance of the Defendants.

102. The proceedings have been constructively terminated in favor of the Plaintiff.

103. Once Child Doe recanted there was no probable cause to continue the DSS proceedings against Marvin.

104. As a result of these Defendants' acts and omissions, the Plaintiff Marvin has suffered losses as is described throughout this Complaint.

**FOR A SEVENTH CAUSE OF ACTION**
**(Abuse of Process)**
**(As to All Defendants)**

105. Plaintiff re-alleges and incorporates all above paragraphs as if repeated verbatim herein.

106. The process of commencing and/or continuing the DSS prosecution was for a purpose other than to rectify a harm to Child Doe and was not a legitimate objective.

107. The objective of Defendant Holly was to get Marvin out of her life and house.

108. The objective of Defendants DSS and Chapman was outlined above in paragraph 48

Received -10:54:53 2016-1

Opt-Out: Not Defined

as well as throughout this Complaint.

109. These willful and intentional acts were not proper in the regular conduct of the DSS proceeding against Marvin.

110. As a direct and proximate result of the Defendants' acts and omissions, Plaintiff Marvin was deprived of his liberty and freedom, was subjected to humiliating treatment, embarrassment in front of his friends and co-workers, damage to his reputation, fear, fright, anxiety, nervousness and continues to this day to suffer from these afflictions, was required to spend money hire attorneys and investigators to defend himself from these baseless and outright false allegations as well as other harms and losses that will be identified during the course of this litigation.

WHEREFORE, Plaintiff, respectfully prays for judgment against all Defendants for all actual damages and consequential damages as well as punitive damages against Defendants Holly and Chapman in an amount to be determined by a jury at the trial of this action as well as attorney's fees and costs and for such other and further relief as this Court deems just and proper.

**MCGOWAN HOOD & FELDER, LLC**

Robert V. Phillips, Esq.
1539 Health Care Drive
Rock Hill, South Carolina 29732
803.327.7800 (T)
803.328.5656 (F)
rphillips@mcgowanhood.com

Rock Hill, South Carolina
September 29th, 2016

Received -10:54:53 2016-1

Opt-Out: Not Defined

Meeting w/ [redacted] @ school

[redacted] came into guidance office conf. room.
Happy, upbeat, little flighty
No marks or bruises observed
She asked about my kids, told her some antedotes
Says she's on meds., doesn't know name again but says same one
School going well, lots of friends, no boyfriend
~~No concerns @ home~~ ←
Mom has new boyfriend, [redacted] is upset her dad and mom aren't together.

[redacted] became very emotional @ point when she was speaking of her parents. She inquired how Marvin was doing I told her she needent worry about him as he was not going to be able to hurt her anymore. [redacted] then stated she was upset because Marvin didn't "deserve this." I tried to explain that people need to be

Exhibit #1

Opt-Out: Not Defined

Received -10:54:53 2016-1

punished when they hurt others and his issues are not her fault. I suggested she speak with a counselor as she is not @ fault. [redacted] stated "He didn't do anything wrong." [redacted] said her mom said they were going to move in with her daddy since he was out of jail. She stated they couldn't be with her daddy unless Marvin wasn't around. [redacted] said she didn't like Marvin because he had too many rules. [redacted] expressed anger "after all I did to help mom, she didn't stay w/ my dad and I hate her new boyfriend." [redacted] stated it was all her mother's idea to help them be with her dad. [redacted] was adament Marvin was strict and mean but equally as adament he never touched her. I told her it was common for victims to feel guilty and recant. She didn't understand what recant meant, so I explained it. She cried and asked me if I thought she would have bad Karma for saying Marvin hurt her. I advised I did not think so @ all and she was a very sweet girl. I assured her this was for adults to handle and she could call me anytime and to her counselor. She was better @ end of meeting and returned to class.

Plan: Speak to Department regarding disclosures

Exhibit #1

Received -10:54:53 2016-1

Opt-Out: Not Defined

# Exhibit #2

DSS

*Serving Children and Families*

LILLIAN B. KOLLER, J.D.
STATE DIRECTOR

NIKKI HALEY
GOVERNOR

Dear Ms. Koller,

I am writing this letter out of concern for the handling a case in Lancaster County, SC. I am employed as a Human Services Specialist II in that county. I have been handling cases as a treatment worker since the third day of my employment.

My concern stems from the Department's position regarding a child sexual abuse case. I am the assigned treatment worker to a case in which a step-father is accused of sexually abusing his step-daughter. The case was indicated for Sexual Abuse about a year ago and ended with an offered plea by the perpetrator in October of this year for a judicial finding of Sexual Abuse.

As part of my duties as treatment caseworker, I routinely meet with the children at least once monthly. I have met with the child victim several times. On one meeting with her, at her school, she informed me that her step-father did not touch her and that her mother had told her to say that. I informed the necessary personnel in the Department of this matter, including my County Director. I was then informed to not notate anything regarding that disclosure in CAPSS, or to follow up in anyway, including with the child's counselor. In fact, I was specifically directed to "keep that to yourself."

While I agree with erring on the side of a child, I do think that the Department intentionally withholding information from CAPSS regarding a meeting with a child is inappropriate and not in the best interest of either the child or the Department. It also prevents the child from receiving necessary or more appropriate services. I am saddened by this directive and hope that the child would be able to get the necessary resources and assistance she needs whether or not her disclosure was accurate. I am not in a position to determine the accuracy of a child's statement, but as her caseworker, I do feel she needs more than the Department ignoring the statements simply because of a judicial finding. I get the feeling that the Department would rather ignore the child than deal with this. I also am highly uncomfortable being told not to document statements made during meetings with children as I thought we were supposed to put everything of importance in CAPSS.

Sincerely,

Heidi E. Roberts

Heidi E. Roberts
Human Services Specialist II
Lancaster County Department of Social Services

Received -10:54:53 2016-1

Opt-Out: Not Defined

RECEIVED
DEC 0 9 2016